Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Jeffrey Z.Y. Liao (CA SBN 288994)
Email: jliao@raklaw.com
Neil A. Rubin (CA SBN 250761)
Email:  nrubin@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
STRAIGHT PATH IP GROUP, INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

STRAIGHT PATH IP GROUP, INC.,

                    Plaintiff,

        v.

AVAYA INC.

                    Defendant.

**Case No.**   5:16-cv-3459

**COMPLAINT**

**COMPLAINT**

1.     Plaintiff Straight Path IP Group, Inc. ("Straight Path" or "Plaintiff"), for its Complaint against Defendant Avaya Inc. ("Defendant"), hereby alleges as follows:

**PARTIES**

2.     Straight Path is a Delaware corporation with its headquarters at 5300 Hickory Park Dr. Suite 218, Glen Allen, VA 23059.

3.     On information and belief, Defendant is a Delaware corporation with its principal place of business at 4655 Great American Parkway, Santa Clara, California 95054.

**NATURE OF THE ACTION**

4.     This is a civil action for the infringement of United States Patent No. 6,009,469 (the "'469 Patent") (attached as Exhibit A), United States Patent No. 6,108,704 (the "'704 Patent") (attached as Exhibit B), United States Patent No. 6,131,121 (the "'121 Patent) (attached as Exhibit C), and United States Patent No. 6,701,365 (the "'365 Patent") (attached as Exhibit D) (collectively, the "Patents-in-Suit") under the patent laws of the United States, 35 U.S.C. § 1, et seq.

5.     This action involves Defendant's manufacture, use, sale, offer for sale, and/or importation into the United States of infringing products, methods, processes, services and systems that are primarily used or primarily adapted for use in point-to-point network communications devices and products containing same, including, for example but without limitation, phones, servers and software used to perform voice over internet protocol ("VOIP"), that infringe one or more of the claims of the Patents-in-Suit.

**JURISDICTION AND VENUE**

6.     This Court has original jurisdiction over the subject matter of this Complaint under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. §§ 271, et seq.

7.     Defendant is subject to personal jurisdiction in this judicial district because Defendant regularly transacts business in this judicial district by, among other things, offering Defendant's products and services to customers, business affiliates and partners located in this judicial district.  In addition, Defendant has committed acts of direct infringement of one or more

RUSS, AUGUST & KABAT

of the claims of one or more of the Patents-in-Suit in this judicial district.

8.     Venue in this district is proper under 28 U.S.C. §§ 1400(b) and 1391(b) and (c), because Defendant is subject to personal jurisdiction in this district and has committed acts of infringement in this district.

## FACTUAL BACKGROUND

9.     The Patents-in-Suit were previously owned by NetSpeak Corporation ("NetSpeak").  NetSpeak used the technology claimed in the Patents-in-Suit in one of its products, WebPhone.

10.     WebPhone earned numerous awards from publications in the fields of computer and communications technology.  In 1996, WebPhone was selected by PC Magazine as the "Editor's Choice" of Internet telephone software.  Computer Telephony Magazine also designated WebPhone an "Editor's Choice" product in 1996.  In 1998, Internet Telephony magazine named WebPhone one of its "Product[s] of the Year."

11.     WebPhone was also the subject of contemporaneous published articles that praised the product.  The authors of these articles described WebPhone and its underlying technology as being new and original, and commented on the potentially far-reaching implications of WebPhone for communications and computer technology.  For example, in August of 1996, Computer Telephony Magazine published an article in which it concluded that NetSpeak's new Business WebPhone System had the potential to be "absolutely revolutionary." The Computer Telephony Magazine article observes that the method devised by the inventors for establishing point-to-point connections between WebPhone client processes was a "new method" that distinguished WebPhone from other competing products available at the time.  A separate review by Consummate Winsock Apps in 1996 observed that "WebPhone may well be on its way towards becoming the killer app that puts to shame similar offerings" from NetSpeak's competitors.

12.     The Patents-in-Suit concern a system and method for enabling point-to-point communications between running computer applications connected to the same computer network, including applications that allow "realtime video teleconferencing" or other "point-to-

2

**COMPLAINT**

point communications in realtime of voice and video." *E.g.,* Ex. B at 1:10-13, 1:50-56, 7:-32-41, 8:21-22). Because real-time point-to-point communications can only be established between applications that are on-line at the time the desired communication is sought (*e.g.*, Ex. B at 6:14-16), the Patents-in-Suit disclose a point-to-point Internet communications protocol that enables: (1) a first computer program to query a connection server to determine if a second computer program is currently connected to the network, and (2) if the second computer program is connected, to obtain its existing network address so that the desired point-to-point communication can be established at the time it is sought. *E.g.*, Ex. B at 1:63-2:10, 3:40-54, 5:15-6:16, 10:4-37, claims 1, 2, 4, 32, 33, 38.

13.     The parent application, the '704 Patent application, was filed on September 25, 1995, when the Internet was in its infancy. Ex. B at cover page, section [22].

14.     The specification of the Patents-in-Suit explain that the increased popularity of on-line services such as America Online spurred the development of computer programs that provide on-line services such as real-time video conferencing. *E.g.*, Ex. B at 1:9-20, 1:48-56, 7:32-41, 8:21-22. Previous technology enabled point-to-point communications between computers with permanent IP addresses. Ex. B at 1:48-52.

15.     When repeatedly logging on and off of the Internet, programs may receive a new, temporary (or "dynamically allocated") IP address each time they reconnect to the network. *E.g.*, Ex. B at 1:35-47, 5:14-29, 6:6-16. Unlike permanent IP addresses that do not change, these "dynamic" IP addresses made it difficult to establish communications between computer programs that (a) are not permanently connected to the network and (b) may have a new, as-yet-unknown IP address when they reconnect to the network. *E.g.*, Ex. B at 1:48-56. The '704 Patent solved these two problems. *E.g.*, Ex. B at 1:63-2:10, 5:15-6:16, 7:32-36, 10:4-37, claims 1, 2, 4, 32, 33, 38.

16.     The Patents-in-Suit solved the computer-related technology problem of point-to-point communications between computer programs that are not permanently connected to a network and may have a new IP address each time they reconnect to a network by providing a point-to-point Internet communications protocol for, among other things:

(1) determining whether a specific, targeted computer program is currently running and connected to a network;

(2) determining that computer program's address on the network at the time the communication is sought; and

(3) establishing a point-to-point communication with that computer program. Ex. B at 1:63-2:10, 5:15-6:16, 7:32-36, 10:4-37, claims 1, 2, 4, 32, 33, 38.

17.    In one embodiment, the disclosed protocol works as follows: a first user who is connected to the Internet or other computer network (the caller) and who wishes to communicate with another user over the Internet uses a program on her networked computer, phone or Personal Digital Assistant ("PDA").  *E.g.*, Ex. B at 3:40-46, 4:26-32, 5:21-24, 10:4-9.  This program then transmits its IP address to a server or series of servers that, among other things, may then determine whether other user devices are on-line and available for communication, and if so, facilitate communications between different on-line devices.  *E.g.*, Ex. B at 3:40-55, 5:25-31, 5:55-6:15, 10:4-21.  From this initial transmission, the connection server obtains and stores the first user's current dynamic IP address in a database.  *E.g.*, Ex. B at 5:25-31.  This initial transmission also establishes the first user's computer program as an on-line party in the appropriate server database or databases.  *E.g.*, Ex. B at 5:31-34, 5:55-60, 6:1-16.

18.    But the first user's program may later disconnect from the network, and therefore no longer be an on-line party available for a point-to-point communication.  *E.g.*, Ex. B at 6:1-14).  Accordingly, to determine if the user's program is actually connected to the network and available for communication, the specification discloses that "[w]hen a user logs off or goes offline from the Internet 24, the connection server 26 updates the status of the user in the database 34; for example by removing the user's information."  Ex. B at 6:6-14.  The connection server could also use a status flag to identify that a registered program is off-line.  *Id.*

19.    Like the first user, a second user (the callee) may also use a connected computer, phone or PDA, thereby storing the user's current IP address in the server database and establishing the second user as on-line.  *E.g.*, Ex. B at 5:34-38, 10:4-7.

20.     The first user can attempt to initiate a point-to-point connection with the second user by sending a request to the server. *E.g.*, Ex. B at 3:40-43, 5:45-56, 10:7-10, 28-32. In response to the first user's request, the server will search its database to determine if the second user is on-line. *E.g.*, Ex. B at 5:57-60, 10:28-34. If the second user is on-line, the server will then forward the IP address of the second user to the first user, which then uses that IP address to establish the point-to-point communication between itself and the second user. *E.g.*, Ex. B at 3:40-42, 5:60-67, 10:12-18, 32-37. If, however, the second user is not on-line at the time the first user makes its query, then the server sends the first user an "off-line" signal or message. *E.g.*, Ex. B at 6:1-16, 10:14-21. Thus, as described in the specifications of the Patents-in-Suit, the disclosed system and method allows for point-to-point communications between two users when they are both online and ready to communicate even where one or both users are dynamically assigned network addresses.

21.     After issuance, the validity of the Patents-in-Suit has been tested a number of times. Despite the citation of hundreds of previously unconsidered prior art, the PTO confirmed the patentability of the majority of the claims of the Patents-in-Suit in a series of examination proceedings.

22.     Most recently, Defendant, among other companies, petitioned for the institution of a series of *Inter Partes* Review ("IPR") proceedings challenging the validity of many of the claims of the Patents-in-Suit. The Patent Trial and Appeals Board ("PTAB") rejected the invalidity arguments made by the IPR petitioners during the IPR proceedings. For example, in a series of IPRs filed by Defendant, the PTAB rejected a variety of invalidity arguments made by Defendant regarding the '469, '704 and '121 Patents. Ex. E (Final Written Decision entered in IPR2015-00196, IPR2015-00198, IPR2015-00209 and the relevant joined proceedings). The PTAB refused to even institute Defendant's challenge to the claims of the '365 Patent. Ex. F (Decision Denying Institution of *Inter Partes* Review in IPR2015-01962). The bases for the findings of the PTAB are strong; the Federal Circuit confirmed the claim construction on which the PTAB decisions are based. Ex. G.

RUSS, AUGUST & KABAT

23.     On September 24, 2014, Straight Path filed an action for infringement against Defendant.  The action was styled *Straight Path IP Group, Inc. v. Avaya Inc.*, Case No. 3:14-cv-04309-WHA.  Pursuant to Federal Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, the action was dismissed without prejudice on December 24, 2014.

24.     Straight Path is the lawful owner-by-assignment of all right, title and interest in and to the Patents-in-Suit.  Straight Path is a majority-owned subsidiary of Straight Path Communications Inc. ("SPCI").  SPCI is a holding company for three companies, Straight Path, Straight Path Spectrum, Inc. ("Straight Path Spectrum"), and Straight Path Ventures, LLC ("Straight Path Ventures").   Straight Path Spectrum holds, leases and markets fixed wireless spectrum in the 39 GHz and 28 GHz spectrums that are used for telecommunications.  In particular, Straight Path Spectrum's spectrum is primarily used to provide backhaul services for existing wireless Internet service providers and for cellular mobile backhaul. Straight Path Ventures is developing next generation wireless technology for 39 GHz.

25.     All maintenance fees for the Patents-in-Suit have been timely paid, and there are no fees currently due.

## COUNT I

### (Defendant's Infringement of the '469 Patent)

26.     Paragraphs 1 through 25 are incorporated by reference as if fully restated herein.

27.     United States Patent No. 6,009,469, entitled "Graphic User Interface For Internet Telephony Application," issued on December 28, 1999 from United States Patent Application No. 08/721,316 filed on September 25, 1996.  On May 10, 2011, an Ex Parte Reexamination Certificate issued for the '469 Patent.  A true and correct copy of the '469 Patent is attached as Exhibit A.

28.     On information and belief, Defendant has made, used, offered for sale, sold and/or imported into the United States products that infringe various claims of the '469 Patent, and continue to do so.  By way of illustrative example, these infringing products include, without limitation, Defendant's Office IP and Aura platforms and related hardware and software.

**COMPLAINT**

29.   Defendant has been and now is directly infringing one or more claims of the '469 Patent under 35 U.S.C. §271(a), in this judicial District and elsewhere in the United States, by, among other things, making, using, selling, offering to sell and/or importing into the United States for subsequent sale or use computer program products capable of executing a first process, connecting to a server process over a computer network, and that include program code for (a) generating a user-interface enabling control of the first process; (b) determining a currently-assigned network protocol address through which the first process can be accessed; (c) connecting to the server and forwarding the process' assigned network protocol address and a unique identifier; (d) querying as to whether a second process is connected to the computer network; (e) receiving the network protocol address of the second process when it is connected; and (f) establishing a point-to-point connection with the second process in response to user commands.  On information and belief, Defendant's VoIP products utilize SIP (Session Initiation Protocol) to, among other things, track the network addresses and online status of users, and to allow users to establish a point-to-point communication link.  *See, e.g.*, https://www.avaya.com/usa/documents/aurataking thenextsteps.pdf at 1, 3, 4 (Aura platform uses SIP); http://www.avaya.com/usa/documents/ip_office_select_sme7648.pdf (Office IP platform uses SIP); http://www.avaya.com/usa/product/phones/ (Defendant's SIP phones).  An exemplary chart showing how Defendant infringes the '469 Patent is attached as Exhibit H.[1]  Exhibit H is based on the public information available to Straight Path, and Straight Path reserves the right to amend Exhibit H based on information obtained through discovery.  Accordingly, the aforementioned products infringe the '469 Patent literally and/or under the doctrine of equivalents.

30.   Defendant actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '469 Patent under 35 U.S.C. §271(b) by its customers and end users.

---

[1] Straight Path reserves the right to assert additional claims of the '469 Patent against Defendant as the litigation proceeds.  For example, Straight Path expressly reserves the right to assert additional claims in its Disclosure of Asserted Claims and Infringement Contentions to be served during the discovery process.

RUSS, AUGUST & KABAT

31.     Defendant has had knowledge of and notice of the '469 Patent and its infringement since at least October 2012, when Defendant began discussing the '469 Patent with Straight Path's predecessor-in-interest, Innovative Communications Technologies, Inc. ("ICTI"). Defendant knew of the '469 Patent no later than September 24, 2014, when Straight Path sued Defendant.  Defendant's knowledge is further supported by the fact that Defendant filed an IPR against the '469 Patent.

32.     Defendant has induced its customers and end users to infringe the '469 Patent by using computer program products capable of executing a first process, connecting to a server process over a computer network, and that include program code for (a) generating a user-interface enabling control of the first process; (b) determining a currently-assigned network protocol address through which the first process can be accessed; (c) connecting to the server and forwarding the process' assigned network protocol address and a unique identifier; (d) querying as to whether a second process is connected to the computer network; (e) receiving the network protocol address of the second process when it is connected; and (f) establishing a point-to-point connection with the second process in response to user commands.  *See, e.g.*, Ex. H.  For example, Defendant encourages its customers and end users to make infringing point-to-point connections through the materials it provides to its customers, including those materials provided on Defendant's Internet website.  *See, e.g.*, http://www.avaya.com/usa/product/avaya-aura-platform/; http://www.avaya.com/usa/product/ip-office/.

33.     Defendant specifically intends its customers and/or end users infringe the '469 Patent, either literally or by the doctrine of equivalents, because Defendant has known about the '469 Patent and how Defendant's products infringe the claims of the '469 Patent but Defendant has not taken steps to prevent the infringement by its customers and/or end users.  Accordingly, Defendant has acted with the specific intent to induce infringement of the '469 Patent.

34.     Accordingly, Defendant has induced infringement of the '469 Patent under 35 U.S.C. §271(b).

35.     Defendant has had knowledge of and notice of the '469 Patent and its infringement since at least October 2012 and no later than September 24, 2014, when Straight

Path sued Defendant.  Defendant's knowledge is further supported by the fact that Defendant filed an IPR against the '469 Patent.  Despite this knowledge, Defendant continues to commit tortious conduct by way of patent infringement.

36.     Defendant has been and continues to be infringing one or more of the claims of the '469 Patent through the aforesaid acts.

37.     Defendant has committed these acts of infringement without license or authorization.

38.     Plaintiff is entitled to recover damages adequate to compensate for the infringement.

39.     Defendant has and continues to infringe the '469 Patent, acting with an objectively high likelihood that its actions constitute infringement of the '469 Patent.  Defendant has known or should have known of this risk at least as early as October 2012.  Accordingly, Defendant's infringement of the '469 Patent is or has been willful.

**COUNT II**

**(Defendant's Infringement of the '704 Patent)**

40.     Paragraphs 1 through 25 are incorporated by reference as if fully restated herein.

41.     United States Patent No. 6,108,704, entitled "Point-to-Point Internet Protocol," issued on August 22, 2000 from United States Patent Application No. 08/533,115 filed on September 25, 1995.  On October 26, 2010, an Ex Parte Reexamination Certificate issued for the '704 patent.  A true and correct copy of the '704 Patent is attached as Exhibit B.

42.     On information and belief, Defendant has made, used, offered for sale, sold and/or imported into the United States products that infringe various claims of the '704 Patent, and continues to do so.  By way of illustrative example, these infringing products include, without limitation, Defendant's Office IP and Aura platforms and related hardware and software.

43.     Defendant has been and now is directly infringing one or more claims of the '704 Patent under 35 U.S.C. §271(a), in this judicial District and elsewhere in the United States, by, among other things, making, using, selling, offering to sell and/or importing into the United States for subsequent sale or use computer program products capable of executing a first process

9

**COMPLAINT**

RUSS, AUGUST & KABAT

and operatively connectable to a second process and a server over a computer network, the computer program product comprising a computer usable medium having program code embodied in the medium, the program code comprising: program code for transmitting to the server a network protocol address received by the first process following connection to the computer network; program code for transmitting, to the server, a query as to whether the second process is connected to the computer network; program code for receiving a network protocol address of the second process from the server, when the second process is connected to the computer network; and program code, responsive to the network protocol address of the second process, for establishing a point-to-point communication link between the first process and the second process over the computer network.  On information and belief, Defendant's VoIP products utilize SIP (Session Initiation Protocol) to, among other things, track the network addresses and online status of users, and to allow users to establish a point-to-point communication link.  *See, e.g.*,

https://www.avaya.com/usa/documents/auratakingthenextsteps.pdf at 1, 3, 4 (Aura platform uses SIP); http://www.avaya.com/usa/documents/ip_office_select_sme7648.pdf (Office IP platform uses SIP); http://www.avaya.com/usa/product/phones/ (Defendant's SIP phones).  An exemplary chart showing how Defendant infringes the '704 Patent is attached as Exhibit I.[2]  Exhibit I is based on the public information available to Straight Path, and Straight Path reserves the right to amend Exhibit I based on information obtained through discovery.  Accordingly, the aforementioned products infringe the '704 Patent literally and/or under the doctrine of equivalents.

44.     Defendant actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '704 Patent under 35 U.S.C. §271(b) by its customers and end users.

---

[2] Straight Path reserves the right to assert additional claims of the '704 Patent against Defendant as the litigation proceeds.  For example, Straight Path expressly reserves the right to assert additional claims in its Disclosure of Asserted Claims and Infringement Contentions to be served during the discovery process.

**COMPLAINT**

45.     Defendant has had knowledge of and notice of the '704 Patent and its infringement since at least October 2012, when Defendant began discussing the '704 Patent with Straight Path's predecessor-in-interest, Innovative Communications Technologies, Inc. ("ICTI"). Defendant knew of the '704 Patent no later than September 24, 2014, when Straight Path sued Defendant.  Defendant's knowledge is further supported by the fact that Defendant filed an IPR against the '704 Patent.

46.     Defendant has induced its customers and end users to infringe the '704 Patent by using computer program products capable of executing a first process and operatively connectable to a second process and a server over a computer network, the computer program product comprising a computer usable medium having program code embodied in the medium, the program code comprising: program code for transmitting to the server a network protocol address received by the first process following connection to the computer network; program code for transmitting, to the server, a query as to whether the second process is connected to the computer network; program code for receiving a network protocol address of the second process from the server, when the second process is connected to the computer network; and program code, responsive to the network protocol address of the second process, for establishing a point-to-point communication link between the first process and the second process over the computer network.  *See, e.g.*, Ex. I.  For example, Defendant encourages its customers and end users to make infringing point-to-point connections through the materials it provides to its customers, including those materials provided on Defendant's Internet website.  *See, e.g.*, http://www.avaya.com/usa/product/avaya-aura-platform/; http://www.avaya.com/usa/product/ip-office/.

47.     Defendant specifically intends its customers and/or end users infringe the '704 Patent, either literally or by the doctrine of equivalents, because Defendant has known about the '704 Patent and how Defendant's products infringe the claims of the '704 Patent but Defendant has not taken steps to prevent the infringement by its customers and/or end users.  Accordingly, Defendant has acted with the specific intent to induce infringement of the '704 Patent.

48.     Accordingly, Defendant has induced infringement of the '704 Patent under 35 U.S.C. §271(b).

49.     Defendant has had knowledge of and notice of the '704 Patent and its infringement since at least September 2012 and no later than September 24, 2014, when Straight Path sued Defendant.  Defendant's knowledge is further supported by the fact that Defendant filed an IPR against the '704 Patent.  Despite this knowledge, Defendant continues to commit tortious conduct by way of patent infringement.

50.     Defendant has been and continues to be infringing one or more of the claims of the '704 Patent through the aforesaid acts.

51.     Defendant has committed these acts of infringement without license or authorization.

52.     Plaintiff is entitled to recover damages adequate to compensate for the infringement.

53.     Defendant has and continues to infringe the '704 Patent, acting with an objectively high likelihood that its actions constitute infringement of the '704 Patent.  Defendant has known or should have known of this risk at least as early as September 2012.  Accordingly, Defendant's infringement of the '704 Patent is or has been willful.

### COUNT III

### (Defendant's Infringement of the '121 Patent)

54.     Paragraphs 1 through 25 are incorporated by reference as if fully restated herein.

55.     United States Patent No. 6,131,121, entitled "Point-to-Point Computer Network Communication Utility Utilizing Dynamically Assigned Network Protocol Addresses," issued on October 10, 2000 from United States Patent Application No. 08/719,554 filed on September 25, 1996.  On December 14, 2010, an Ex Parte Reexamination Certificate issued for the '121 Patent.  A true and correct copy of the '121 Patent is attached as Exhibit C.

56.     On information and belief, Defendant has made, used, offered for sale, sold and/or imported into the United States products that infringe various claims of the '121 Patent, and

RUSS, AUGUST & KABAT

continues to do so.  By way of illustrative example, these infringing products include, without limitation, Defendant's Office IP and Aura platforms and related hardware and software.

57.     Defendant has been and now is directly infringing one or more claims of the '121 Patent under 35 U.S.C. §271(a), in this judicial District and elsewhere in the United States, by, among other things, making, using, selling, offering to sell and/or importing into the United States for subsequent sale or use apparatuses for use with a computer system, the computer system executing a first process operatively coupled over a computer network to a second process and a directory database server process, the apparatus comprising: program logic configured to, following connection of the first process to the computer network, forward to the address server a network protocol address at which the first process is connected to the computer network; program logic configured to query the address server as to whether the second process is connected to the computer network; program logic configured to receive a network protocol address of the second process from the address server, when the second process is connected to the computer network; and program logic configured to, in response to the network protocol address of the second process, establish a point-to-point communication link with the second process over the computer network.  On information and belief, Defendant's VoIP products utilize SIP (Session Initiation Protocol) to, among other things, track the network addresses and online status of users, and to allow users to establish a point-to-point communication link.  *See, e.g.*, https://www.avaya.com/usa/documents/auratakingthenextsteps.pdf at 1, 3, 4 (Aura platform uses SIP); http://www.avaya.com/usa/documents/ip_office_select_sme7648.pdf (Office IP platform uses SIP); http://www.avaya.com/usa/product/phones/ (Defendant's SIP phones).  An exemplary chart showing how Defendant infringes the '121 Patent is attached as Exhibit J.[3] Exhibit J is based on the public information available to Straight Path, and Straight Path reserves the right to amend Exhibit J based on information obtained through discovery.  Accordingly, the

---

[3] Straight Path reserves the right to assert additional claims of the '121 Patent against Defendant as the litigation proceeds.  For example, Straight Path expressly reserves the right to assert additional claims in its Disclosure of Asserted Claims and Infringement Contentions to be served during the discovery process.

**COMPLAINT**

aforementioned products infringe the '121 Patent literally and/or under the doctrine of equivalents.

58.     Defendant actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '121 Patent under 35 U.S.C. § 271(b) by its customers and end users.

59.     Defendant has had knowledge of and notice of the '121 Patent and its infringement since at least October 2012, when Defendant began discussing the '121 Patent with Straight Path's predecessor-in-interest, ICTI.  Defendant knew of the '121 Patent no later than September 24, 2014, when Straight Path sued Defendant.  Defendant's knowledge is further supported by the fact that Defendant filed an IPR against the '121 Patent.

60.     Defendant has induced its customers and end users to infringe the '121 Patent by using apparatuses for use with a computer system, the computer system executing a first process operatively coupled over a computer network to a second process and a directory database server process, the apparatus comprising: program logic configured to, following connection of the first process to the computer network, forward to the address server a network protocol address at which the first process is connected to the computer network; program logic configured to query the address server as to whether the second process is connected to the computer network; program logic configured to receive a network protocol address of the second process from the address server, when the second process is connected to the computer network; and program logic configured to, in response to the network protocol address of the second process, establish a point-to-point communication link with the second process over the computer network.  *See, e.g.*, Ex. J.  For example, Defendant encourages its customers and end users to make infringing point-to-point connections through the materials it provides to its customers, including those materials provided on Defendant's Internet website.  *See, e.g.*, http://www.avaya.com/usa/product/avaya-aura-platform/; http://www.avaya.com/usa/product/ip-office/.

61.     Defendant specifically intends its customers and/or end users to infringe the '121 Patent, either literally or by the doctrine of equivalents, because Defendant has known about the

'121 Patent and how Defendant's products infringe the claims of the '121 Patent but Defendant has not taken steps to prevent the infringement by its customers and/or end users. Accordingly, Defendant has acted with the specific intent to induce infringement of the '121 Patent.

62.    Accordingly, Defendant has induced infringement of the '121 Patent under 35 U.S.C. §271(b).

63.    Defendant has had knowledge of and notice of the '121 Patent and its infringement since at least October 2012 and no later than September 24, 2014, when Straight Path sued Defendant. Defendant's knowledge is further supported by the fact that Defendant filed an IPR against the '121 Patent. Despite this knowledge, Defendant continues to commit tortious conduct by way of patent infringement.

64.    Defendant has been and continues to be infringing one or more of the claims of the '121 Patent through the aforesaid acts.

65.    Defendant has committed these acts of infringement without license or authorization.

66.    Plaintiff is entitled to recover damages adequate to compensate for the infringement.

67.    Defendant has and continues to infringe the '121 Patent, acting with an objectively high likelihood that its actions constitute infringement of the '121 Patent. Defendant has known or should have known of this risk at least as early as October 2012. Accordingly, Defendant's infringement of the '121 Patent is or has been willful.

## COUNT IV

### (Defendant's Infringement of the '365 Patent)

68.    Paragraphs 1 through 25 are incorporated by reference as if fully restated herein.

69.    United States Patent No. 6,701,365, entitled "Point-to-Point Internet Protocol," issued on March 2, 2004 from United States Patent Application No. 09/345,222 filed on June 30, 1999. On August 3, 2010, an Ex Parte Reexamination Certificate issued for the '365 Patent. A true and correct copy of the '365 Patent is attached as Exhibit D.

RUSS, AUGUST & KABAT

1    70.    On information and belief, Defendant has made, used, offered for sale, sold and/or

2    imported into the United States products that infringe various claims of the '365 Patent, and

3    continues to do so.  By way of illustrative example, these infringing products include, without

4    limitation, Defendant's Office IP and Aura platforms and related hardware and software.

5    71.    Defendant has been and now is directly infringing one or more claims of the '365

6    Patent under 35 U.S.C. §271(a), in this judicial District and elsewhere in the United States, by,

7    among other things, making, using, selling, offering to sell and/or importing into the United

8    States for subsequent sale or use of computer systems operatively coupled over a computer

9    network to a plurality of processes where a method comprising the following steps is performed:

10    receiving the current network protocol address of a process coupled to the network, the network

11    protocol address being received by the process from an Internet access server; receiving an

12    identifier associated with said one process; receiving a query for one of the network protocol

13    address and the associated identifier of said one process from another of the processes over the

14    computer network at a connection server; and providing one of the network protocol address and

15    the associated identifier of said one process to a said another process over the computer network,

16    if the said one process is connected to the computer network, and to allow the establishment of a

17    packet-based point-to-point communication between said one process and one of said another

18    processes.  On information and belief, Defendant's VoIP products utilize SIP (Session Initiation

19    Protocol) to, among other things, track the network addresses and online status of users, and to

20    allow users to establish a point-to-point communication link.  *See, e.g.*,

21    https://www.avaya.com/usa/documents/aurataakingthenextsteps.pdf at 1, 3, 4 (Aura platform uses

22    SIP); http://www.avaya.com/usa/documents/ip_office_select_sme7648.pdf (Office IP platform

23    uses SIP); http://www.avaya.com/usa/product/phones/ (Defendant's SIP phones).  An exemplary

24    chart showing how Defendant infringes the '365 Patent is attached as Exhibit K.[4]  Exhibit K is

25    based on the public information available to Straight Path, and Straight Path reserves the right to

26    _____

[4] Straight Path reserves the right to assert additional claims of the '365 Patent against Defendant

27    as the litigation proceeds.  For example, Straight Path expressly reserves the right to assert
       additional claims in its Disclosure of Asserted Claims and Infringement Contentions to be served

28    during the discovery process.

RUSS, AUGUST & KABAT

amend Exhibit K based on information obtained through discovery.  Accordingly, the aforementioned products infringe the '365 Patent literally and/or under the doctrine of equivalents.

72.     Defendant actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '365 Patent under 35 U.S.C. §271(b) by its customers and end users.

73.     Defendant has had knowledge of and notice of the '365 Patent and its infringement since at least October 2012, when Defendant began discussing the '365 Patent with Straight Path's predecessor-in-interest, ICTI.  Defendant had knowledge of the '365 Patent no later than September 24, 2014, when Straight Path sued Defendant.  Defendant's knowledge is further supported by the fact that Defendant filed an IPR against the '365 Patent.

74.     Defendant has induced its customers and end users to infringe the '365 Patent by using computer systems operatively coupled over a computer network to a plurality of processes where a method comprising the following steps is performed:  receiving the current network protocol address of a process coupled to the network, the network protocol address being received by the process from an Internet access server; receiving an identifier associated with said one process; receiving a query for one of the network protocol address and the associated identifier of said one process from another of the processes over the computer network at a connection server; and providing one of the network protocol address and the associated identifier of said one process to a said another process over the computer network, if the said one process is connected to the computer network, and to allow the establishment of a packet-based point-to-point communication between said one process and one of said another processes.  *See, e.g.*, Ex. K.  For example, Defendant encourages its customers and end users to make infringing point-to-point connections through the materials it provides to its customers, including those materials provided on Defendant's Internet website.  *See, e.g.*, http://www.avaya.com/usa/product/avaya-aura-platform/; http://www.avaya.com/usa/product/ip-office/.

RUSS, AUGUST & KABAT

75.     Defendant specifically intends its customers and/or end users to infringe the '365 Patent, either literally or by the doctrine of equivalents, because Defendant has known about the '365 Patent and how Defendant's products infringe the claims of the '365 Patent but Defendant has not taken steps to prevent the infringement by its customers and/or end users.  Accordingly, Defendant has acted with the specific intent to induce infringement of the '365 Patent.

76.     Accordingly, Defendant has induced infringement of the '365 Patent under 35 U.S.C. §271(b).

77.     Defendant has had knowledge of and notice of the '365 Patent and its infringement since at least October 2012 and no later than September 24, 2014, when Straight Path sued Defendant.  Defendant's knowledge is further supported by the fact that Defendant filed an IPR against the '365 Patent.  Despite this knowledge, Defendant continues to commit tortious conduct by way of patent infringement.

78.     Defendant has been and continues to be infringing one or more of the claims of the '365 Patent through the aforesaid acts.

79.     Defendant has committed these acts of infringement without license or authorization.

80.     Plaintiff is entitled to recover damages adequate to compensate for the infringement.

81.     Defendant has and continues to infringe the '365 Patent, acting with an objectively high likelihood that its actions constitute infringement of the '365 Patent.  Defendant has known or should have known of this risk at least as early as October 2012.  Accordingly, Defendant's infringement of the '365 Patent is or has been willful.

## PRAYER FOR RELIEF

Wherefore, Straight Path IP Group, Inc., respectfully requests the following relief:

a)  A judgment that Defendant has infringed the '469 Patent;

b)  A judgment that Defendant has infringed the '704 Patent;

c)  A judgment that Defendant has infringed the '121 Patent;

d)  A judgment that Defendant has infringed the '365 Patent;

18

**COMPLAINT**

RUSS, AUGUST & KABAT

e)  A judgment that awards Straight Path all appropriate damages under 35 U.S.C. § 284 for the Defendant's past infringement, and any continuing or future infringement of the Patents-in-Suit, up until the date such judgment is entered, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary, to adequately compensate Straight Path for Defendant's infringement;

f)  An adjudication that Defendant's infringement of the Patents-in-Suit has been willful and deliberate;

g)  An adjudication that Straight Path be awarded treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Defendant's willful and deliberate infringement of the Patents-in-Suit;

h)  An adjudication that this case is exceptional within the meaning of 35 U.S.C. § 285;

i)  An adjudication that Straight Path be awarded the attorneys' fees, costs, and expenses it incurs in prosecuting this action; and

j)  An adjudication that Straight Path be awarded such further relief at law or in equity as the Court deems just and proper.

Respectfully submitted,

DATED: June 21, 2016                    **RUSS, AUGUST & KABAT**


*/s/ Marc A. Fenster*
Marc A. Fenster, SBN 181067
Jeffrey Z.Y. Liao, CA SBN 288994
Neil A. Rubin, SBN 250761
Twelfth Floor
12424 Wilshire Boulevard
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Attorneys for Plaintiff*
*Straight Path IP Group, Inc.*

**COMPLAINT**

1

2

## **DEMAND FOR JURY TRIAL**

3

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Straight Path IP

4

Group, Inc. request a trial by jury of any issues so triable by right.

5

6

Respectfully submitted,

7

DATED: June 21, 2016                    **RUSS, AUGUST & KABAT**

8

9

_/s/ Marc A. Fenster_

10

Marc A. Fenster, SBN 181067
Jeffrey Z.Y. Liao, CA SBN 288994
Neil A. Rubin, SBN 250761

11

Twelfth Floor
12424 Wilshire Boulevard

12

Los Angeles, California 90025
Telephone: (310) 826-7474

13

Facsimile: (310) 826-6991

14

_Attorneys for Plaintiff_
_Straight Path IP Group, Inc._

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20
**COMPLAINT**